THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BIOMED REALTY, L.P.,

        Plaintiff,

    v.

700 DEXTER, LLC,

        Defendant.

Civil Action No.: 2:15-cv-00930-JCC

**DEFENDANT 700 DEXTER, LLC'S MOTION FOR SUMMARY JUDGMENT**

**NOTE ON MOTION CALENDAR: JANUARY 29, 2016**

DEFENDANT 700 DEXTER, LLC'S MOTION
FOR SUMMARY JUDGMENT
CIVIL ACTION NO.: 2:15-CV-00930-JPD

BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3600
Seattle, WA  98104-4040
Telephone:  (206) 332-1380

# TABLE OF CONTENTS

I.    INTRODUCTION ....................................................................................................1

II.   STATEMENT OF FACTS .......................................................................................3

      A.    Dexter and BioMed Enter Into the Purchase and Sale Agreement. ........................3

            1.    The Representation and Warranty By Dexter That There Were No
                  Pending or Threatened Claims Affecting the Property Was a
                  Condition Precedent to Closing. ..................................................................3

      B.    The Representations and Warranties Under Section 9.4 Were Rendered
            Inaccurate After the Execution of the PSA By Threatened Litigation From a
            Third-Party. .......................................................................................................5

      C.    BioMed Refuses to Waive Section 9.4, and Instead Demands a Release From
            Washington Builders' Parent Company, Vulcan, Inc. ...........................................6

      D.    Dexter Unsuccessfully Negotiates Seventeen Standstill Agreements, Six
            Draft Alternative Dispute Resolution Agreements, and a Sixth Amendment to
            the PSA Over the Course of Fourteen Months to Achieve a Release That
            Would Satisfy BioMed. .......................................................................................7

      E.    Washington Builders Asserts That It Will Never Execute a Vulcan Release
            and Never Calculates or Communicates to Dexter the Full Extent of the
            Damages It Claims. ...........................................................................................10

      F.    BioMed's Refusal to Close Without a Release From Vulcan Results in a
            Perpetual Stalemate That Prevents Closing. ......................................................11

III.  MEMORANDUM OF LAW ...................................................................................13

      A.    Legal Standard. ................................................................................................13

      B.    BioMed's Claims Must Be Dismissed Because Failure to Perform a
            Condition Precedent Is Not a Breach of Contract................................................14

            1.    BioMed's Refusal to Waive Section 9.4 Without a Release From
                  Vulcan Ensures the Condition Precedent to Closing Can Never Be
                  Fulfilled................................................................................................15

            2.    Dexter's Efforts to Satisfy the Condition Precedent Were Made in
                  Good Faith. .........................................................................................17

            3.    The Financial Assurances Provision Under Section 8.1(q) of the PSA
                  Is Not an Alternative to Securing a Release Because It Is an
                  Unenforceable Agreement to Agree. .....................................................19

            4.    Specific Performance Is Not Available to BioMed Under the PSA. .........22

IV.   CONCLUSION.....................................................................................................23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*16th Street Investors, LLC v. Morrison*,
    153 Wash. App. 44 (2009).................................................................................21

*CHG Intern., Inc. v. Robin Lee, Inc.*,
    35 Wash. App. 512 (1983).................................................................14, 17, 18

*Doyle v. Nutrilawn U.S., Inc.*,
    No. C09-0942JLR, 2010 WL 1980280 (W.D. Wash. May 17, 2010) ....................14

*Empire Realty Invests., Inc. v. U.S. Affordable Housing, LLC*,
    No. 1:14-cv-380, 2015 WL 2404375 (N.D. Ind. May 19, 2015)..........................23

*Engst v. OrthAlliance, Inc.*,
    No. C01-1469C, 2004 WL 7092226 (W.D. Wash. Mar. 1, 2004).........................14

*Foote v. Viking Ins. Co. of Wisconsin*,
    57 Wash. App. 831 (1990).................................................................................22

*GMAC v. Everett Chevrolet, Inc.*,
    179 Wash. App. 126 (2014)...............................................................................23

*Keystone Land & Development Co. v. Xerox Corp.*,
    152 Wash.2d 171 (2004)...................................................................................20

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986).........................................................................................13

*McFerrin v. Old Republic Title, Ltd.*,
    No. C08-5309BHS, 2009 WL 2045212 (W.D. Wash. July 9, 2009)......................13

*McGary v. Westlake Investors*,
    99 Wash. 2d 280 (1983)...................................................................................22

*P.E. Systems, LLC v. CPI Corp.*,
    176 Wash.2d 198 (2012)...............................................................................20, 21

*Parker v. Tumwater Family Practice Clinic*,
    118 Wash. App. 425 (2003)...............................................................................22

*Richter v. Port of Seattle*,
    173 Wash. App. 1014 (2013)..............................................................................20

DEFENDANT 700 DEXTER, LLC'S MOTION     ii
FOR SUMMARY JUDGMENT
2:15-CV-00930-JPD

BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3600
Seattle, WA  98104-4040
Telephone:  (206) 332-1380

*Salvo v. Thatcher*,
   128 Wash. App. 579......................................................................................................18

*Sandeman v. Sayres*,
   50 Wash.2d 539 (1957)...........................................................................................19, 21

*T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*,
   809 F.2d 626 (9th Cir. 1987) ......................................................................................13

*Tacoma Northpark, LLC v. NW, LLC*,
   123 Wash. App. 73 (2004)................................................................................14, 17, 18

*Veritas Operating Corp. v. Microsoft Corp.*,
   No. C06-0703-JCC, 2008 WL 217727 (W.D. Wash. Jan. 24, 2008) ......................13

*Washington Mut., Inc. v. United States*,
   No. C06-1550-JCC, 2008 WL 8422136 (W.D. Wash. Aug. 12, 2008)....................13

**Other Authorities**

Fed. R. Civ. P. 56.............................................................................................................1, 13

Fed. R. Civ. P. 56(a) ...........................................................................................................13

Fed.R.Civ.P. 56(e) ..............................................................................................................13

DEFENDANT 700 DEXTER, LLC'S MOTION            iii
FOR SUMMARY JUDGMENT
2:15-CV-00930-JPD

BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3600
Seattle, WA  98104-4040
Telephone:  (206) 332-1380

Pursuant to Federal Rules of Civil Procedure 56, Defendant 700 Dexter, LLC ("Dexter") respectfully moves for summary judgment against Plaintiff BioMed Realty, L.P. ("BioMed"). In support thereof, Dexter provides the following memorandum.

## I.   INTRODUCTION

The issues in this case are straightforward: BioMed insists that it will not close on its Purchase and Sale Agreement ("PSA") with Dexter for real property located at 700 Dexter Avenue North in Seattle (the "Property") unless and until a certain condition precedent is performed, but Washington Builders LLC ("Washington Builders"), an independent third party over which neither Dexter nor BioMed has any control, refuses to agree to any terms that would allow such performance.

Included in the PSA was a representation and warranty under Section 9.4 that at the time of execution of the Agreement, Dexter was not aware of and had not received written notice of any pending or threatened claims affecting the Property.  It is undisputed that, at the time the PSA was executed, this representation was true.  However, more than two years after the execution of the Agreement, Washington Builders LLC, a third party over which neither Dexter nor BioMed has any control, threatened claims that it incurred costs related to contamination that migrated from the Property, contrary to Section 9.4 of the Agreement.  In order to avoid having to terminate the PSA, Dexter concurrently engaged in negotiations with Washington Builders and BioMed to resolve the issue.

BioMed's clear and consistent message over the course of fifteen months of negotiation was that it would not waive Section 9.4 for anything less than a release by Washington Builders *and* its parent company, Vulcan, Inc., an entity controlled by investor and Microsoft co-founder Paul Allen.  This position was never open to negotiation, despite the fact that Vulcan never once threatened suit.  In fact, Kevin M. Simonsen, Senior Vice President of Real Estate Legal for BioMed, who participated in the negotiation of the PSA, confirmed in no uncertain terms that a release of Washington Builders alone "would not have been acceptable" to BioMed "***at any***

1   *time*." Declaration of Laurin D. Quiat in Support of Motion for Summary Judgment ("Quiat

2   Decl."), Ex. A (Simonsen Depo.) at 126:11-16 (emphasis added).

3          Likewise, Washington Builders was intransigent in its rejection of a Vulcan release—

4   such a release would never be part of the negotiations from Washington Builders' perspective.

5   Jim Broadlick, the Director of Design and Construction for Vulcan Real Estate and project

6   manager for Washington Builders, reiterated in deposition that a Vulcan release "could ***never*** be

7   executed." Quiat Decl., Ex. B (Broadlick Depo.) at 69:9-17 (emphasis added). Nor was

8   Washington Builders interested in settling its claims for a dollar amount. Washington Builders

9   never communicated or even assessed the dollar amount necessary to make it whole. Indeed,

10  negotiations with Washington Builders ended after Washington Builders took all releases off the

11  table in May 2015. Thus, despite over a year of effort, including dozens of emails, calls,

12  meetings, and negotiated versions of Agreement Amendments and Alternative Dispute

13  Resolution Agreements, Washington Builders made it clear that neither Washington Builders nor

14  Vulcan would agree to release BioMed or the Property from any claims, and Dexter has no

15  reasonable expectation of securing any such release in the future.

16         The result was an impenetrable deadlock. Frozen in a stalemate between BioMed and

17  Washington Builders, Dexter was incapable of fulfilling the condition precedent. It had no

18  choice but to terminate the contract in lieu of keeping the Property in a perpetual stasis, locked in

19  a contract that could never be performed. BioMed responded not by waiving the condition

20  precedent, but by filing suit against Dexter for specific performance or, alternatively, damages.

21  But when a condition precedent cannot be satisfied despite the good faith efforts of the parties—

22  as the undisputed material facts amply demonstrate is the case here—it is fundamental to

23  contract law that no liability attaches. There is no default of either party to the contract, and the

24  contracting parties are relieved of their duties and obligations under their contract.

25         Whatever other issues or allegations may exist between BioMed and Dexter in regards to

26  the PSA, the undisputed material facts in this case make two things abundantly clear: BioMed

27  will not close without a release from both Washington Builders *and* Vulcan, and after over a year

of negotiation, Washington Builders and Vulcan would never execute any such release.  As long as BioMed refuses to waive Section 9.4 of the Agreement, a closing on the Property cannot happen.  In short, BioMed's claims have no basis in fact or law.

Thus, for all of these reasons, the Court should grant Dexter's Motion for Summary Judgment and dismiss BioMed's claims for specific performance and damages.

## II.   STATEMENT OF FACTS

### A.   Dexter and BioMed Enter Into the Purchase and Sale Agreement.

The Property subject to this action is situated in South Lake Union, one of Seattle's most desirable and fastest-growing commercial and residential areas.  However, the cost of admission to developers in the area is often environmental remediation of contamination leftover from the area's industrial past, and the 700 Dexter Property is no exception.  The Property was the former location of an industrial dry-cleaning operation with significant soil and groundwater contamination.  Nonetheless, BioMed agreed to purchase the Property for $18 million from Dexter, and both parties executed the PSA on October 26, 2011.  Quiat Decl., Ex. C.  Dexter, BioMed, and the entity that sold the Property to Dexter, American Linen Service, subsequently executed a Memorandum of Purchase Agreements and recorded the same in the Recorder's Office of King County, Washington on February 1, 2012, which created a public record notice of BioMed's claim of an ownership interest in the Property.[1]   Quiat Decl., Ex. D; *Id*., Ex. A (Simonsen Depo.) at 50:11-17; 51:15-20.

### 1.   The Representation and Warranty By Dexter That There Were No Pending or Threatened Claims Affecting the Property Was a Condition Precedent to Closing.

The PSA contained a number of provisions to deal with the environmental remediation of the Property and to allocate liability for contamination among Dexter and BioMed.  Critical to

---

[1] Dexter entered into an agreement to purchase the Property from American Linen Supply Company ("ALS") on January 25, 2010 with the intention of cleaning the contamination and redeveloping the Property to bring new investment, jobs, residents, and commerce to the area.  After contracting to purchase the Property, Dexter managed certain remediation activities on behalf of ALS in regard to contamination at and migrating from the Property.  On April 30, 2015, Dexter completed the purchase of the Property from ALS and is now record title owner of the Property.

DEFENDANT 700 DEXTER, LLC'S MOTION           3          BAKER & HOSTETLER LLP
FOR SUMMARY JUDGMENT                                      999 Third Avenue, Suite 3600
2:15-CV-00930-JPD                                                     Seattle, WA  98104-4040
                                                                                Telephone:  (206) 332-1380

the agreement of the parties were the representations and warranties included in the PSA, which were covered in Articles 8 and 9.  For instance, Section 8.1(d) generally requires that "[a]ll of Seller's representations and warranties set forth in this Agreement shall be true and correct in all material respects on the Closing Date as though made at the time of the Closing."  Quiat Decl., Ex. C at BR11063.  Article 9 of the Agreement, entitled Representations and Warranties of Seller, more exactly details the representations and warranties deemed to be "material" by the Parties.  *Id*. at BR11070.  Section 9.4, entitled "Litigation and Condemnation," provides, in relevant part, that:

> Seller has not received written notice of, and, to the best of Seller's knowledge and belief, there are no: (a) pending or threatened claims, actions, suits, arbitrations, proceedings (including Condemnation Proceedings) or investigations by or before any court or arbitration body, any governmental, administrative or regulatory authority, or any other body, against or affecting the Property or the transactions contemplated by this Agreement . . . .

*Id*. at BR11070.  Importantly, Section 9.15 explicitly states that "[t]he continued accuracy in all material respects of the aforesaid representations and warranties [including Section 9.4] ***is a condition precedent to Buyer's obligation to close*.**"  *Id*. at BR11072 (emphasis added); Quiat Decl., Ex. A (Simonsen Depo.) at 48:6-10, 48:13-23, 71:10-13.  Section 9.15 provides the remedy agreed to by the parties should any of the representations or warranties under Article 9 be inaccurate.  It states that:

> if any of said representations and warranties are not correct in all material respects at the time the same is made or as of Closing, and Seller had no knowledge of such inaccuracy when the representation or warranty was made (or when deemed remade at Closing), or if such warranty or representation becomes inaccurate on or prior to closing other than by reason of Seller's default hereunder, Buyer may, upon being notified in writing by Seller of such occurrence on or prior to Closing, either: (a) terminate this Agreement and Escrow pursuant to the provisions of Section 8.5(a) hereof; or (b) waive such matter and proceed to closing.

Quiat Decl., Ex. C at BR11072-11073.  Thus, if Section 9.4 were to be rendered inaccurate after the PSA was executed, but before closing, for any other reason than default by Dexter, under the

DEFENDANT 700 DEXTER, LLC'S MOTION
FOR SUMMARY JUDGMENT
2:15-CV-00930-JPD

4

BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3600
Seattle, WA  98104-4040
Telephone:  (206) 332-1380

1   terms of the PSA, BioMed had two remedies available to it: waiver of Section 9.4 or termination

2   of the PSA.

3       **B.**   **The Representations and Warranties Under Section 9.4 Were Rendered**
            **Inaccurate After the Execution of the PSA By Threatened Litigation From a**
4            **Third-Party.**

5       At the time the parties executed the PSA, Dexter was not aware of and had not received

6   written notice of any pending or threatened claims affecting the Property, consistent with the

7   representations and warranties enumerated in Section 9.4 of the Agreement.  Quiat Decl., Ex. A

8   (Simonsen Depo.) at 47:18-48:3, 124:7-11.  On or about March 2014, over two years after the

9   execution of the PSA, Washington Builders, a third party unaffiliated with either Dexter or

10  BioMed, asserted legal claims in relation to the Property.  Quiat Decl., Ex. B (Broadlick Depo.)

11  at 28:17-29:1.  Washington Builders is a single purpose LLC, managed by Vulcan, Inc., which

12  owns and develops a single piece of property located at 601 Westlake Avenue, otherwise known

13  as Block 43, near the Property.  *Id*. at 12:10-12; 17:19-22; 20:13-22; *see also* Quiat Decl., Ex. E

14  at Dexter215.  Washington Builder's sole development on Block 43 has been the construction of

15  the Allen Institute for Brain Science.  Quiat Decl., Ex. B (Broadlick Depo.) at 15:17-16:8.

16  Although Washington Builders knew of environmental problems on Block 43 since 2012 (*id*. at

17  19:21-20:3, 27:4-10), it wasn't aware that a plume had potentially emanated from the 700 Dexter

18  Property to Block 43 until February 11, 2014 (*id*. at 12:10-12; 17:19-22; 20:13-22).

19      In the midst of its own construction, Washington Builders claimed no later than March

20  2014 that it encountered contamination migrating from the 700 Dexter Property and was

21  incurring additional costs for its clean-up.  Quiat Decl., Ex. B (Broadlick Depo.) at 33:2-4, 33:6-

22  14.  By April 28, 2014, Washington Builders' claim included damages for remediation of the

23  property, diminished property values, increased construction costs and lost profits.  Quiat Decl.,

24  *Id*. at 46:13-47:5; *id*., Ex. F at Dexter191.  Consequently, over the course of the following year,

25  counsel for Washington Builders repeatedly threatened litigation based on these claims, with the

26  intent to file a lawsuit if no resolution could be achieved.  Quiat Decl., Ex. B (Broadlick Depo.)

27

1    at 28:17-29:1, 42:3-10; *id*., Ex. G at Dexter162; *id*., Ex. H at Dexter623; *id*., Ex. I at Dexter365;

2    *id*., Ex. J at Dexter485; *id*., Ex. B (Broadlick Depo.) at 66:21-67:5.

3         When it learned of Washington Builders' claim, Dexter brought it to BioMed's attention,

4    making BioMed aware of the nature of the litigation threat and its significance to Secion 9.4.

5    Quiat Decl., Ex. A (Simonsen Depo.) at 62:7-10, 72:18-21; *id*., Ex. K at BR18188.  BioMed

6    agreed that the Washington Builders claim and corresponding litigation threats rendered Section

7    9.4 of the PSA inaccurate at that time.  *Id*., Ex. A (Simonsen Depo.) at 71:3-9, 131:2-4, 132:8-

8    18; *id*., Ex. B (Broadlick Depo.) at 28:17-29:1.

9         **C.   BioMed Refuses to Waive Section 9.4, and Instead Demands a Release From**
          **Washington Builders' Parent Company, Vulcan, Inc.**
10

11        BioMed made clear from the beginning, in April 2014, that it would not waive Section

12   9.4 of the PSA.  Quiat Decl., Ex. A (Simonsen Depo.) at 55:20-56:7.  Understanding that the

13   Washington Builders' allegations were inconsistent with the representations and warranties

14   enumerated in Section 9.4 of the already executed agreement, Dexter immediately entered into

15   the first of seventeen standstill agreements with Washington Builders on April 4, 2014,

16   committing each party to refrain from initiating legal action in exchange for the other party's

17   promise of the same while the parties attempted to resolve their dispute.  *Id*., Ex. E.

18        BioMed was aware that Dexter was participating in standstill agreements with

19   Washington Builders (Quiat Decl., Ex. A (Simonsen Depo.) at 72:7-15; *id*. Ex. K at BR18188

20   and BR18217-18218) and demanded that Dexter acquire a release from Washington Builders'

21   parent company and all subsidiaries.  On May 1, 2014, Denis Sullivan, BioMed's senior vice-

22   president of finance, sent an email to Eric Williams, one of Dexter's executives, that outlined a

23   "framework intended to provide a path to advance the 700 Dexter Transaction," and confirming

24   that BioMed "remain[ed] keenly interested in acquiring this site." *Id*., Ex. L at BR18435.[2]  In

25

26   ────────────
     [2] Although BioMed's letter makes a variety of allegations related to the performance of the PSA, BioMed never
     moved to terminate the contract based on any of these issues, and was, in fact, "very interested in buying this
27   property."  Quiat Decl., Ex. A (Simonsen Depo.) at 69:4-8 (nothing in the letter rose to the level of requiring
     termination of the PSA at that time), 86:21-24 (no indication that BioMed would terminate the PSA based upon

DEFENDANT 700 DEXTER, LLC'S MOTION          6          BAKER & HOSTETLER LLP
FOR SUMMARY JUDGMENT                                   999 Third Avenue, Suite 3600
2:15-CV-00930-JPD                                      Seattle, WA  98104-4040
                                                       Telephone:  (206) 332-1380

1    that email, BioMed made clear that, as a condition of closing, "BioMed shall receive a full

2    release from Vulcan, and this release shall come from Vulcan's parent company, apply to all

3    subsidies and affiliates, and cover any current and/or future claims . . . in a form acceptable to

4    BioMed in its sole and absolute discretion." *Id.* On that same day, BioMed also acknowledged

5    by letter that the continued accuracy of Section 9.4 was a condition precedent to closing and

6    informed Dexter that it did not consider the standstill agreements to be a satisfactory remedy of

7    the representations and warranties enumerated in Section 9.4 of the Agreement. In that letter,

8    BioMed repeated its demand for indemnification as a condition of closing. *Id.*, Ex. M at

9    BR1161.

> ### D. Dexter Unsuccessfully Negotiates Seventeen Standstill Agreements, Six Draft Alternative Dispute Resolution Agreements, and a Sixth Amendment to the PSA Over the Course of Fourteen Months to Achieve a Release That Would Satisfy BioMed.

13    From April 2014 through May 15, 2015, Dexter was earnestly negotiating for a release

14    from Washington Builders. After its initial Standstill Agreement on April 4, 2014, Dexter

15    negotiated another sixteen additional standstill agreements between April 10, 2014 and

16    December 1, 2014.[3] Quiat Decl., Ex. N. Washington Builders was already aware of BioMed's

17    involvement with the 700 Dexter Property (*id.*, Ex. B (Broadlick Depo.) at 39:24-40:1, 40:5,

18    102:18-103:1), and while these standstill agreements were in place, Dexter entered into

19    negotiations with Washington Builders to have BioMed released from any putative claims

20    related to the Property. *Id.*, Ex. B (Broadlick Depo.) at 37:4-23; *id.*, Ex. O.

21    Initially, Dexter proposed a draft Alternative Dispute Resolution (ADR) agreement that

22    outlined a mediation process and a release from Washington Builders "in consideration for any

---

alleged milestone date issue), 64:15-23 (no action to terminate based upon alleged failure to provide updates), 41:10-13 (no action to terminate by the end of the extended investigation period).

[3] The Parties do not have fully executed copies of the twelfth, fifteenth, and sixteenth standstill agreements, but Mr. Broadlick confirmed in deposition that Dexter and Washington Builders agreed to the terms of those standstill agreements even though the signature pages could not be found. Quiat Decl., Ex. B (Broadlick Depo.) at 72:3-24 (Twelfth), 75:16-777:13 (Fifteenth and Sixteenth). The seventeenth standstill agreement was negotiated and drafted but may never have been signed because by that time, according to Mr. Broadlick, "BioMed was not willing to close the sale without a release so the need for a standstill agreement was no longer necessary." *Id.* at 77:18-78:6.

DEFENDANT 700 DEXTER, LLC'S MOTION     7     BAKER & HOSTETLER LLP
FOR SUMMARY JUDGMENT                   999 Third Avenue, Suite 3600
2:15-CV-00930-JPD                            Seattle, WA 98104-4040
                                      Telephone: (206) 332-1380

payment . . . in satisfaction of Washington Builders' Claim, including all Washington Builders

Claims against any future purchaser of the 700 Dexter Property, whether currently known or

unknown." Quiat Decl., Ex. O at Dexter1135.  But Washington Builders refused the release,

deleting it entirely in its version of the ADR.  *Compare id.*, Ex. O at Dexter1135, ¶2(B) *with id.*,

Ex. F at Dexter192-193.   On May 7, 2014, Dexter proposed new release language, which stated

that "in consideration for the deposit" of an unstated amount dollar amount "of 'Dexter/ALS

Escrow Funds' . . . and Dexter's agreement to enter into this ADR Agreement to resolve claims

asserted by Washington Builders, Washington Builders releases Washington Builders' Claims

against any future purchaser, lender, owner or investor in the 700 Dexter Property, whether

currently known or unknown."  *Id.*, Ex. Q at Dexter1110, ¶3.  Again, Washington Builders

completely rejected this language and deleted it from the working ADR draft because it was "not

willing to provide for a release of their claims as it pertains to future purchasers of the 700

Dexter property."  *Id.*, Ex. B (Broadlick Depo.) at 54:13-21; *id.*, Ex. R at Dexter1069.

Dexter persisted in negotiations, and on June 3, 2014, Washington Builders circulated a

new draft ADR agreement, which conceded a release from Washington Builders.  Under that

version of the ADR, Washington Builders agreed to release its "claims against any future

purchaser, lender, owner or investor in the 700 Dexter Property, whether known or unknown,"

but only on condition that Dexter be excluded from the release.  Quiat Decl., Ex. S at

Dexter1039, ¶3.  This newly proposed provision also included new, additional language

requiring BioMed to release its potential claims against Washington Builders arising out of the

700 Dexter Contamination.  *Id.*  However, BioMed rejected this proposed release because it did

not also include a release from Washington Builders' parent company, Vulcan, Inc.  Quiat Decl.,

Ex. A (Simonsen Depo.) at 125:5-12.

While negotiations were ongoing with Washington Builders, Dexter concurrently

attempted to negotiate with BioMed a Sixth Amendment to the PSA to provide sufficient

assurances to BioMed so it would close on the Property, notwithstanding the Washington

1   Builders claims.[4]  By July 9, 2014, Dexter had informed BioMed that "we do not expect that

2   Vulcan will provide a release."  Quiat Decl., Ex. T at BR18466.  Regardless, BioMed stuck to its

3   position and proposed an August 2014 draft Sixth Amendment that required a Vulcan release as

4   a condition of closing.  *Id*., Ex. U at BR18519, ¶7.  BioMed again rejected release language in

5   the August ADR draft exchanged between Dexter and Washington Builders because it lacked a

6   release from Vulcan.  *Id*., Ex. V at Dexter611-612, ¶3; *id*., Ex. A (Simonsen Depo.) at 126:6-16.

7          Accordingly, in August 2014, Dexter dutifully expressed to Washington Builders

8   BioMed's desire to expand the scope of the release in the ADR Agreement by including a release

9   from Vulcan.  Quiat Decl., Ex. B (Broadlick Depo.) at 63:8-21.  Indeed, by August 25, 2014,

10  Dexter proposed specific language for an expanded release to include Vulcan.  *Id*., Ex. I at

11  Dexter368; *see also id*., Ex. W.  Although Washington Builders was aware that BioMed was

12  concerned about other entities or properties in the area that were owned by Vulcan, this new

13  language never made its way into future ADR drafts.  *Id*., Ex. B (Broadlick Depo.) at 65:19-66:5,

14  70:8-17.  According to Mr. Broadlick, a Vulcan release "could ***never*** be executed."  *Id*. at 69:9-

15  17 (emphasis added).

16         In October 2014, Dexter voiced its concerns over the possibility and necessity of a

17  Vulcan release, which BioMed rejected.  Quiat Decl., Ex. X at BR18545-18546.  As of

18  November 2014, BioMed's instructions to Dexter remained that any release from Washington

19  Builders must also include a release from Vulcan.  *Id*., Ex. A (Simonsen Depo.) at 117:6-13,

20  125:5-12.  Indeed, despite the fact that "there were a number of times where [Dexter] said they

21  didn't feel they could get" a release from Vulcan (*id*. at 129:5-12, 94:14-22), at BioMed's

22  insistence, the broader Vulcan release remained in the December 11, 2014, January 14, 2015,

23  and February 28, 2015 versions of the Sixth Amendment to the PSA (*id*., Ex. Y at BR6778-6779,

24  ¶13 and Ex. Z at Dexter8052-8053, ¶11), with the last of those drafts requiring Dexter to obtain

25

26  [4] From December 8, 2011 to January 30, 2012 Dexter and BioMed agreed to five separate amendments to the PSA,
    dealing with issues such as extending the investigation period, removing underground storage tanks, or setting
27  amended terms for acquiring an opinion letter from the Washington Department of Ecology, none of which are
    relevant for purposes of this motion.

1   releases from both Washington Builders *and* Vulcan as a condition of closing (*id*, Ex. AA at

2   BR7949-950, ¶15).

3       **E.**    **Washington Builders Asserts That It Will Never Execute a Vulcan Release**
    **and Never Calculates or Communicates to Dexter the Full Extent of the**

4   **Damages It Claims.**

5          In fifteen months of negotiation, every draft ADR proposed by Dexter included some

6   form of release for BioMed (Quiat Decl., Ex. B (Broadlick Depo.) at 89:20-90:5), and Dexter

7   had pushed Washington Builders to include a broad release from Vulcan.  But this expanded

8   language was never included or used by Washington Builders in future draft ADR agreements.

9   *Id*., Ex. B (Broadlick Depo.) at 70:8-17.  Eventually, on May 11, 2015, Washington Builders

10  removed the release language completely from its ADR proposal, scrapping any prospect of a

11  release for BioMed in connection with the Property.  *Id*., Ex. B (Broadlick Depo.) at 91:5-10,

12  90:6-14; *id*., Ex. BB.  And, in fact, by May 2015, not only had Washington Builders made clear

13  to Dexter that a broad release from Vulcan could *never* be executed (*Id*., Ex. B (Broadlick Depo.)

14  at 69:9-16), but the willingness of Washington Builders to issue a release on its own behalf was

15  also gone.

16         As an alternative resolution, Dexter sought to settle the Washington Builders claims.

17  However, Washington Builders made it impossible to settle its claims for a dollar amount.

18  Through every iteration of ADR agreement proposals, Washington Builders never

19  communicated a dollar amount to resolve its claims.  Quiat Decl., Ex. B (Broadlick Depo.) at

20  70:18-71:17.  Even though Washington Builders estimated actual costs incurred from the

21  damages related to its claims to be approximately $2.2 million (*id*. at 100:11-19) and forecast a

22  cost to remediate at $4 million (*id*. at 111:22-112:21; Quiat Decl., Ex. S at Dexter1039, ¶2), it

23  has never actually calculated its complete remediation cost for the Property.  *Id*., Ex. B at

24  111:13-15.  Moreover, the $4 million forecast was never intended by Washington Builders to be

25  the total cost of its claim, nor has Washington Builders ever calculated a dollar amount for

26  diminished property or the impact on its construction schedule.  *Id*. at 113:9-19 (forecast),

27  130:22-131:8 (diminished value), 131:9-132:2 (construction schedule).  In addition, according to

DEFENDANT 700 DEXTER, LLC'S MOTION     10
FOR SUMMARY JUDGMENT
2:15-CV-00930-JPD

BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3600
Seattle, WA  98104-4040
Telephone:  (206) 332-1380

1    Mr. Broadlick, costs for remediation have yet to be assessed, given that remediation is ongoing,

2    and may not be finished for another five years. *Id.* at 115:2-20.

3        **F.    BioMed's Refusal to Close Without a Release From Vulcan Results in a
             Perpetual Stalemate That Prevents Closing.**

4

5        By May 20, 2015, BioMed's positon was that the threat of litigation continued to exist

6    from Washington Builders that rendered Dexter's representations and warranties under Section

7    9.4 inaccurate. Quiat Decl., Ex. A (Simonsen Depo.) at 130:12-17. Yet, the continued accuracy

8    of the representations and warranties under Section 9.4 of the PSA remained a condition

9    precedent to closing. However, by May 20, 2015, BioMed had not indicated to Dexter that it

10   would waive Section 9.4 of the PSA (*id.*, Ex. B (Simonsen Depo.) at 131:14-18) while at the

11   same time repeatedly insisting that a release from Vulcan would be required for closing (*id.*, Ex.

12   A (Simonsen Depo.) at 102:14-16, 111:25-112:4, 125:23-126:5, 126:11-16, 127:19-128:1).

13   Indeed, from the time BioMed became aware of the Washington Builders' threatened litigation

14   in April 2014 through May 20, 2015, it never indicated to 700 Dexter that it would accept a

15   release executed solely by Washington Builders. *Id.*, Ex. A (Simonsen Depo.) at 127:19-128:1.

16       But a release from Vulcan was never on the table, and it never would be. Despite months

17   of negotiation, Washington Builders and Dexter had reached what Mr. Broadlick called in his

18   deposition a "stalemate," and no resolution could be reached. Quiat Decl., Ex. B (Broadlick

19   Depo.) at 94:10-13, 117:1-5. Even though, from Washington Builders' perspective, Dexter had

20   negotiated in good faith to execute an ADR agreement (*id.* at 59:13-19), Washington Builders

21   and Dexter never came to agree upon terms for an ADR agreement, nor did they execute a final

22   version. *Id.* at 37:14-23, 70:8-17. To this day, Washington Builders maintains its claims, which

23   have not been settled (or fully quantified). *Id.* at 99:14-20. By May 11, 2015, Washington

24   Builders had eliminated the release language entirely from the working ADR draft and had

25   communicated to Dexter that it could never provide a release from Vulcan. *Id.* at 69:9-16, 70:8-

26   17.

27

DEFENDANT 700 DEXTER, LLC'S MOTION          11          BAKER & HOSTETLER LLP
FOR SUMMARY JUDGMENT                                    999 Third Avenue, Suite 3600
2:15-CV-00930-JPD                                       Seattle, WA  98104-4040
                                                        Telephone:  (206) 332-1380

1    Thus, by May 20, 2015, Dexter was stuck between two intractable positions.  Regardless

2    of whether or when a closing deadline could be established, the situation created the

3    impossibility of never being able to close the transaction with BioMed.  On the one hand,

4    BioMed would not close without the Vulcan release, and on the other hand, Washington Builders

5    would never execute such a release.

6    Dexter was left with no choice but to inform BioMed it was terminating the PSA because

7    (1) subsequent to the execution of the Agreement, Washington Builders LLC, a third party over

8    which Dexter has no control, threatened claims in relation to the Property contrary to Section 9.4

9    of the Agreement; (2) despite Dexter's consistent, diligent and good faith efforts to obtain a

10   release of claims from Washington Builders, Dexter has been unable to obtain such a release and

11   has no reasonable expectation that such a release is forthcoming; (3) BioMed has refused to

12   waive Section 9.4 of the Agreement; and, therefore, (4) Dexter's performance has been excused

13   by the failure of a condition precedent and/or has been rendered impossible.  Quiat Decl., Ex. CC

14   at 1.

15   In response, on May 27, 2015, BioMed filed suit against Dexter in state court.  Compl.

16   (Dkt. #1).  BioMed claims that the "real property which is the subject of the contract [PSA] is

17   unique" and that it is "entitled to specific performance of the contract and an injunction requiring

18   700 Dexter to perform under the contract and deliver the property."  *Id*. at ¶3.1.  BioMed claims

19   that "[in] the alternative, 700 Dexter has breached the contract by repudiating it" and that

20   "BioMed has been damaged as a proximate result in an amount to be proven at trial, but not less

21   than many millions of dollars."  *Id*. at ¶4.1.  In its prayer for relief, BioMed seeks "an Order

22   compelling 700 Dexter to deliver title to the real property in question per contract," or,

23   "alternatively, for damages in an amount to be proven at trial."  *Id*. at V. (a)-(b).  On June 11,

24   2015, Dexter removed the case to federal court (Dkt. #1), and on June 12, 2015, Dexter filed its

25   counterclaims for a declaratory judgment against BioMed stating that the PSA is rightfully

26   subject to termination, subject to the return of BioMed's earnest money, and for a decree

27   quieting title to the disputed Property in favor of Dexter.  Dkt. #10.  Accordingly, on July 29,

DEFENDANT 700 DEXTER, LLC'S MOTION          12          BAKER & HOSTETLER LLP
FOR SUMMARY JUDGMENT                                    999 Third Avenue, Suite 3600
2:15-CV-00930-JPD                                       Seattle, WA  98104-4040
                                                       Telephone:  (206) 332-1380

1  2015, Dexter requested that BioMed's earnest money be returned to it, but on August 6, 2015,

2  BioMed refused to accept the money and requested that it remain in escrow.  Quiat Decl., Ex.

3  FF.  On August 18, 2015, Dexter filed a motion to strike BioMed's jury demand (Dkt. # 17), and

4  the Court subsequently ordered that all legal issues associated with BioMed's breach of contract

5  claim, as well as all legal and factual issues pertaining to BioMed's specific performance claim,

6  are to be decided by the Court, and not a jury (Dkt. #27).

### III.   MEMORANDUM OF LAW

#### A.      Legal Standard.

9  Rule 56 of the Federal Rules of Civil Procedure governs summary judgment motions and

10 provides that a court must grant summary judgment "if the movant shows that there is no

11 genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of

12 law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of showing that no genuine

13 issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574,

14 586 (1986). If the moving party meets this initial burden, then the party opposing the motion

15 must set forth facts showing that there is a genuine issue for trial. *Veritas Operating Corp. v.*

16 *Microsoft Corp.,* No. C06-0703-JCC, 2008 WL 217727, at *4 (W.D. Wash. Jan. 24, 2008).  "A

17 'material' fact is one that is relevant to an element of a claim or defense and whose existence

18 might affect the outcome of the suit." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n,* 809

19 F.2d 626, 630 (9th Cir.1987). There is no genuine issue of fact for trial where the record, taken

20 as a whole, could not lead a rational trier of fact to find for the nonmoving party. *McFerrin v.*

21 *Old Republic Title, Ltd.*, No. C08-5309BHS, 2009 WL 2045212, at *4 (W.D. Wash. July 9,

22 2009) (citing *Matsushita Elec. Indus. Co.,* 475 U.S. at 586 (nonmoving party must present

23 specific, significant probative evidence, not simply "some metaphysical doubt"); *see also*

24 Fed.R.Civ.P. 56(e).  If the nonmoving party fails to establish the existence of a genuine issue of

25 material fact, "the moving party is entitled to judgment as a matter of law." *Washington Mut.,*

26 *Inc. v. United States*, No. C06-1550-JCC, 2008 WL 8422136, at *4 (W.D. Wash. Aug. 12, 2008)

27 (*citing Celotex Corp. v. Catrett,* 477 U.S. 317, 323-24 (1986)).

**B.     BioMed's Claims Must Be Dismissed Because Failure to Perform a Condition Precedent Is Not a Breach of Contract.**

BioMed's claims must be dismissed because there can be no liability for breach of contract when a condition precedent, such as the continued accuracy of Section 9.4, is not fulfilled, despite the good faith efforts of the parties.  There can be no breach as a matter of law because "'[c]onditions precedent' are 'those facts and events, occurring subsequently to the making of a valid contract, that must exist or occur before there is a right to immediate performance, before there is a breach of contract duty, before the usual judicial remedies are available.'" *Tacoma Northpark, LLC v. NW, LLC*, 123 Wash. App. 73, 79 (2004) (*quoting Ross v. Harding*, 64 Wash. 2d 231, 236 (1964)).  Thus, "the nonoccurrence of a condition precedent prevents the promisor [Dexter] from acquiring a right (to require [BioMed] to purchase the property) or deprives it of one, but it does not subject the promisor [Dexter] to liability." *Tacoma Northpark, LLC*, 123 Wash. App. at 79. Accordingly, when a condition precedent is present, "the court should not set aside the limitation and enforce the promise in spite of the non-performance of the condition."  *CHG Intern., Inc.*, 35 Wash. App. at 514.

To determine whether a contractual provision "suggests a conditional intent, not a promise," the court must determine the legal effect of the contract.  *Tacoma Northpark, LLC*, 123 Wash. App. at 79. "The legal effect of a contract is a question of law that may properly be determined on summary judgment." *Engst v. OrthAlliance, Inc*., No. C01-1469C, 2004 WL 7092226, at *3 (W.D. Wash. Mar. 1, 2004) (*citing Absher Constr. Co. v. Kent School Dist. No. 415*, 77 Wash.App. 137, 890 P.2d 1071, 1073 (1995) (holding that "interpretation of an unambiguous contract is a question of law")).  Under Washington law, courts attempt to determine the parties' intent "by focusing on the objective manifestations of the agreement," making "the subjective intent of the parties . . . irrelevant if the court can determine the intent from the actual words used."  *Doyle v. Nutrilawn U.S., Inc.*, No. C09-0942JLR, 2010 WL 1980280, at *2 (W.D. Wash. May 17, 2010) (*citing Hearst Commc'ns, Inc. v. Seattle Times Co.*, 154 Wash.2d 493, 115 P.3d 262, 267 (Wash. 2005)).

Here, the plain language of the PSA expressly makes performance of Section 9.4 a condition precedent.  Section 9.15 explicitly states that "[t]he continued accuracy in all material respects of the aforesaid representations and warranties [including Section 9.4] *is a condition precedent to Buyer's obligation to close*." Quiat Decl., Ex. C at BR11072 (emphasis added).  Thus, the PSA directly and unambiguously makes performance of Section 9.4 a condition precedent to the closing of the transaction for the Property, as opposed to a contractual promise, and the requirements of this condition precedent have not been met.  Section 9.4 represents and warrants that there are no "pending or threatened claims, actions, suits . . . against or affecting the Property or the transactions contemplated by this Agreement." *Id*. at BR11070.  But as the facts amply demonstrate, Washington Builders has asserted claims related to the alleged migration of contamination from the Property, which it maintains to this day.  Quiat Decl., Ex. B (Broadlick Depo.) at 99:14-20.  It cannot be reasonably disputed that the condition precedent under Sections 9.15 and 9.4 remain unfulfilled.

### 1. BioMed's Refusal to Waive Section 9.4 Without a Release From Vulcan Ensures the Condition Precedent to Closing Can Never Be Fulfilled.

In fact, BioMed's requirement of a Vulcan release as a condition to closing ensures that it can never be fulfilled.  As documented by the evidence in this case, BioMed has remained steadfast in its demand that Dexter obtain a release from Vulcan before BioMed will close on the Property.  After April 2014, when BioMed communicated to Dexter that it would not waive Section 9.4 of the PSA (Quiat Decl., Ex. A (Simonsen Depo.) at 55:20-56:7), BioMed mandated a Vulcan release in an email and letter in May 2014 (*id*., Ex. L at BR18435; Ex. M at BR1161) and in its rejection of a proposed release that did not include Vulcan in June (*id*., Ex. A (Simonsen Depo.) at 125:5-12) and August 2014 (*id*. at 126:6-16).  BioMed reiterated this requirement again in November 2014 (*id*. at 117:6-13) and insisted on the inclusion of a broader Vulcan release as a condition of closing in the August 15, 2014, December 11, 2014, January 14, 2015, and February 28, 2015, versions of the Sixth Amendment to the PSA. Quiat Decl., Exs. U

DEFENDANT 700 DEXTER, LLC'S MOTION
FOR SUMMARY JUDGMENT
2:15-CV-00930-JPD

15

BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3600
Seattle, WA  98104-4040
Telephone:  (206) 332-1380

at BR18519, ¶7, Y at BR6778-6779, ¶13, Z at Dexter8052-8053, ¶11, and AA at BR7949-950, ¶15.  By May 20, 2015, BioMed had not indicated to Dexter that it would waive Section 9.4 of the PSA (*id.*, Ex. A (Simonsen Depo.) at 131:14-18).  From the time BioMed became aware of the Washington Builders' threatened litigation through May 20, 2015 (a period of at least fourteen months), it never indicated to 700 Dexter that it would accept a release executed solely by Washington Builders.  *Id.* at 127:19-128:1.  To the contrary, Mr. Simonsen, BioMed's 30(b)(6) representative, confirmed that a release of Washington Builders alone "would not have been acceptable" to BioMed "***at any time***."  *Id.* at 126:11-16 (emphasis added).  This admission is critical because, as the evidence also makes crystal clear, Washington Builders was *never* going to execute a Vulcan release.

When it learned of Washington Builders' claims, Dexter engaged in negotiations with both Washington Builders and BioMed to either cure the defect in Section 9.4 or obtain a release sufficient to satisfy BioMed enough to waive Section 9.4.  Over the course of approximately fifteen months, this proved a herculean task because Washington Builders was not willing to provide what BioMed demanded for closing.  Ultimately, Dexter's task was impossible for at least two reasons.

First, Dexter was *never* going to obtain a Vulcan release from Washington Builders.  The prospect of a Washington Builders release of BioMed was uncertain at best.  Initially, Washington Builders rejected the idea outright on three separate occasions.  Quiat Decl., Ex. F at Dexter192-193, Ex. B (Broadlick Depo.) at 54:13-21; *see also id.*, Ex. R at Dexter1069.  In its June and August 2014 ADR drafts, Washington Builders finally agreed to some form of release for BioMed, but BioMed rejected this language because it did not include a Vulcan release.  *Id.* Ex. S at Dexter1039, ¶3) and Ex. A (Simonsen Depo.) at 125:5-12, 126:6-16.  On May 15, 2015, Washington Builders sent its final ADR revisions to Dexter, which removed all release language entirely, eliminating the prospect of even a Washington Builders release, let alone a Vulcan release.  *Id.*, Ex. B (Broadlick Depo.) at 91:5-10, 90:6-14 and Ex. BB.  Ultimately, a Vulcan release was never included or used in any draft ADR agreements (*id.*, Ex. B (Broadlick Depo.) at

1   70:8-17), and Washington Builders and Dexter never came to terms on an ADR agreement (*id*. at

2   37:14-23, 70:8-17).  And, in fact, by May 2015, Washington Builders made clear that a broad

3   Vulcan release "could *never* be executed."  *Id*. at 69:9-16.

4          Second, it is axiomatic that any settlement of Washington Builders' claims required

5   Washington Builders' cooperation, but Washington Builders never communicated or even

6   assessed the dollar amount necessary to make it whole.  Quiat Decl., Ex. B (Broadlick Depo.) at

7   111:13-15, 113:9-19, 130:22-131:8, 131:9-132:2.  In fact, to this day Washington Builders

8   claims that the full extent of its damages is unknown.  *Id*. at 115:2-20.  Washington Builders

9   presently maintains its claims, in contradiction to Section 9.4, which have not been settled.  *Id*. at

10  99:14-20.

11         Given the undisputed material facts regarding Washington Builders' intractable position,

12  BioMed's demand for a release of Vulcan and its subsidiaries cannot reasonably be viewed as a

13  good faith attempt to resolve the representation and warranty under Section 9.4.  A reasonable

14  position that would have sufficiently addressed BioMed's liability concerns would have been a

15  release from the claims related to Block 43, which was limited to Washington Builders' threats

16  of future litigation.  By repeatedly demanding a much broader release from Vulcan, BioMed

17  ensured that the PSA would be locked in a stalemate.  Even so, Dexter did everything it could, in

18  good faith, to meet the condition precedent of Section 9.4 under the PSA.

19              **2.      Dexter's Efforts to Satisfy the Condition Precedent Were Made in
                          Good Faith.**

20

21         Consequently, even though Dexter was unsuccessful in fulfilling the condition precedent

22  of Section 9.4, it "need only establish that it made a good faith effort to satisfy the condition" to

23  be discharged of its contractual duties under the PSA.  *CHG Intern., Inc. v. Robin Lee, Inc.*, 35

24  Wash. App. 512, 514-515 (1983); *accord Tacoma Northpark, LLC*, 123 Wash. App. at 78-79.

25  As the facts in this case demonstrate, there can be no reasonable allegations or evidence to

26  suggest that Dexter did not meet this standard.  Dexter's good faith is evident from more than

27

DEFENDANT 700 DEXTER, LLC'S MOTION          17        BAKER & HOSTETLER LLP
FOR SUMMARY JUDGMENT                                  999 Third Avenue, Suite 3600
2:15-CV-00930-JPD                                     Seattle, WA  98104-4040
                                                     Telephone:  (206) 332-1380

merely an absence of evidence—there are ample facts of this case showing affirmative good faith efforts on Dexter's part.

For example, there is no suggestion or evidence that, at the time the parties executed the PSA, Dexter was aware of and had received written notice of any pending or threatened claims affecting the Property, consistent with the representations and warranties enumerated in Section 9.4 of the Agreement.  Quiat Decl., Ex. A (Simonsen Depo.) at 47:18-48:3, 124:7-11.  This is consistent with the fact that Washington Builders only learned on February 11, 2014, of the claims it would assert against the Property—more than two years after the PSA was executed by Dexter.  *Id.*, Ex. B (Broadlick Depo.) at 12:10-12; 17:19-22; 20:13-22.

Moreover, there no evidence that Dexter negotiated with Washington Builders to obtain a release for BioMed in bad faith.  For instance, there is no allegation or evidence that Dexter engaged in fraud or actively attempted to sabotage its own performance.  In fact, all material facts are to the contrary.  Over the course of approximately fifteen months, Dexter negotiated a total of seventeen standstill agreements (Quiat Decl., Exs. E and N) and seven draft alternative dispute resolution Agreements with Washington Builders (*id.*, Exs. F, Q, R, S, V, EE, BB), while at the same time negotiating six draft amendments to the PSA with BioMed (*id.*, Exs. U, DD, P, Y, Z, AA), all in a good faith effort to satisfy the condition precedent to closing the real property transaction.  At BioMed's insistence, Dexter pushed for a broad release of Vulcan, even after it advised BioMed that obtaining such a release may not be the best strategy and would be a difficult proposition in any case.  *Id.*, Ex. X at BR18545-18546, Ex. A (Simonsen Depo.) at 129:5-12, 94:14-22), Ex. B (Broadlick Depo.) at 63:8-21, Ex. I at Dexter368, Ex. W.

Washington courts have determined the actions of a party to be made in good faith under similar circumstances and for much less effort than that exerted by Dexter, particularly when the condition precedent was prevented by an independent third party.  *See, e.g., CHG Intern., Inc.*, 35 Wash. App. at 515 (condition precedent for sale of real property was purchasing third party's interest, but third party was unwilling to sell and would not have sold before closing even though the defendant continuously negotiated for purchase); *Salvo v. Thatcher*, 128 Wash. App. 579,

DEFENDANT 700 DEXTER, LLC'S MOTION
FOR SUMMARY JUDGMENT
2:15-CV-00930-JPD

18

BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3600
Seattle, WA  98104-4040
Telephone:  (206) 332-1380

1   586 (financing was condition precedent to contract for the purchase of real property, and Salvo

2   continued to pursue financing in good faith by making applications for loans, but was not

3   approved by lenders, so was not in default); *Tacoma Northpark, LLC*, 123 Wash. App. at 78-81

4   (parties discharged of contractual obligations when condition precedent to sale of real property

5   was final plat approval by city, but city did not approve the final plat and engineering firm hired

6   to complete platting encountered financial difficulties preventing it from completing platting

7   process).  The same outcome is manifest here.  Dexter made every effort to perform Section 9.4

8   of the PSA in good faith, but, due to circumstances entirely beyond its control, it cannot fulfill

9   this condition precedent.  As a matter of law, Dexter cannot be in default.

10
11
   **3.**    **The Financial Assurances Provision Under Section 8.1(q) of the PSA Is Not an Alternative to Securing a Release Because It Is an Unenforceable Agreement to Agree.**

12     During his deposition, Mr. Simonsen implied that Dexter could have employed Section

13   8.1(q) of the PSA, a financial assurances provision, to provide some financial mechanism to

14   cover liability for the Washington Builders claim if no release from Vulcan could be achieved,

15   therefor providing BioMed with the financial security it required to waive Section 9.4.  This

16   position is unavailing and does nothing to challenge the good faith efforts of Dexter.   Section

17   8.1(q) is an agreement to agree, which is unenforceable under Washington law—a fact that Mr.

18   Simonsen and BioMed's transactional counsel, Kelly Spicher, have already conceded.   Quiat

19   Decl., Ex. A (Simonsen Depo.) at 83:22-84:15, 85:8-13; *id*. Ex. M at BR1161.

20     Under Washington law, "[a]n agreement for an agreement, or, in other words, an

21   agreement to do something which requires a further meeting of the minds of the parties and

22   without which it would not be complete is unenforceable." *Sandeman v. Sayres*, 50 Wash.2d

23   539, 542 (1957).  This is particularly true in instances where parties to a contract agree to

24   determine an amount as part of an essential term of the contract at a future date.  The court may

25   determine only a reasonable amount defined for an essential term when the parties have

26   "definitely and finally agreed" on that amount.  *Id*. at 543.  When limits on essential terms are

27   not fixed with "reasonable certainty," the court cannot determine what a reasonable limit may

---

DEFENDANT 700 DEXTER, LLC'S MOTION
FOR SUMMARY JUDGMENT
2:15-CV-00930-JPD

   19

BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3600
Seattle, WA  98104-4040
Telephone:  (206) 332-1380

1  be.  *Id*. at 541 & 543 (noting that if a term is so "indefinite that a court cannot decide just what it

2  means, and fix exactly the legal liability of the parties," there cannot be an enforceable

3  agreement.).

4       Section 8.1 (q) states, in relevant part:

5       Financial Assurance for Off-Property Cleanup Obligations.  ***Buyer and Seller
   shall have agreed on the form of financial assurances*** Seller shall provide to

6       Buyer at Closing to cover . . . any third-party claims arising from Hazardous
   Materials on the Land . . . .  Such financial assurances shall be ***in an amount at***

7       ***least equal to the sum of [] the estimated costs of remediation*** of the Land and
   Off-Property Contamination . . . .  Buyer agrees that ***access to funds in the***

8       ***Cleanup and Liability Fund . . . shall be considered a sufficient financial***
   ***assurance provided the amount available to Buyer . . . is at least equal to the***

9       ***amount required under this section***.

10

11  Quiat Decl., Ex. C at BR11065 (emphasis added).  As made clear by its own language, Section

12  8.1(q) requires that Dexter and BioMed *agree to agree* on the form and the amount of financial

13  assurance, which has an undefined minimum amount equal to the "estimated costs of

14  remediation" based on a number of potential, but not requisite, factors.

15       Under these circumstances, the Washington Supreme Court has refused to imply "a duty

16  to continue negotiations" and has "decline[d] to create and impose a duty to go forward in the

17  absence of an enforceable contract."  *Keystone Land & Development Co. v. Xerox Corp*., 152

18  Wash.2d 171, 180 (2004).  Moreover, it is of no consequence if one or the other party believes

19  that the undefined amount may eventually be determined.  "The indefiniteness of [the] term at the

20  time [the parties] signed the [] agreement is the relevant time to consider when determining

21  whether the [] agreement is an enforceable contract, not some undefined time

22  thereafter."  *Richter v. Port of Seattle*, 173 Wash. App. 1014 at *4 (2013).  Accordingly, whether

23  the parties *could* eventually reach a specific amount based on discernible factors is "analytically

24  irrelevant" otherwise.  *See, e.g., Id*.  (Plaintiff argued that square footage could have been

25  determined by a surveyor, and the exact boundaries were the sole determination of the defendant,

26  but whether the defendant or a surveyor could later determine the square footage does not change

27  the fact that this term was not defined in the letter agreement).  As applied to dollar amounts left

---

DEFENDANT 700 DEXTER, LLC'S MOTION     20      BAKER & HOSTETLER LLP
FOR SUMMARY JUDGMENT                           999 Third Avenue, Suite 3600
2:15-CV-00930-JPD                                   Seattle, WA  98104-4040
                                                Telephone:  (206) 332-1380

1    to be determined at a future date, Washington courts look for "a specific number determined by a

2    specific mathematical formula." *P.E. Systems, LLC v. CPI Corp.*, 176 Wash.2d 198, 209 (2012)

3    (holding that a contract in which a blank addendum was an open term that could be easily

4    calculated because the addendum expressly stated the amount would be calculated by dividing

5    total costs by total revenue).

6            Here, although some parameters were set for the "reasonable estimation" of the amount

7    of financial assurances, *i.e.*, estimated costs of remediation, etc., what is lacking is the

8    "reasonable certainty" allowing the court to "fix ***exactly*** the legal liability of the

9    parties." *Sandeman*, 50 Wash.2d at 541, 543 (emphasis added).  Nor is there any "specific

10   number determined by a specific mathematical formula." *P.E. Systems, LLC v. CPI Corp.*, 176

11   Wash.2d 198, 209 (2012).  Instead, there are a number of factors the parties contemplated would

12   be involved in the estimation of the final amount of financial assurance, but that amount is to be

13   set at a future time, which requires a further meeting of the minds.

14           BioMed has already conceded that Section 8.1(q) is too indefinite to be enforced.  For

15   example, Mr. Simonsen agreed at his deposition that Section 8.1(q) provided no formula for

16   discerning what amount would be sufficient to satisfy BioMed with regard to the Washington

17   Builders' claim.   Quiat Decl., Ex. A (Simonsen Depo.) at 83:22-84:15, 85:8-13.  Further, in its

18   May 1, 2014 letter, BioMed's counsel expressed concern that "it may be difficult for the parties

19   to agree on the amount necessary to cover remediation and/or third party claims from Hazardous

20   Materials on the Land or from Off-Property contamination," making note of "the unknowns

21   inherent in the migration of contaminants," and ultimately asserting that Section 8.1(q) "is an

22   'agreement to agree,'" which "[u]nder Washington law" is "not enforceable." *Id*., Ex. M at

23   BR1161.

24           Moreover, "[w]hen parties seek specific performance of a contract [as BioMed does here]

25   a higher standard of proof must be met: clear and unequivocal evidence that leaves no doubt as

26   to the terms, character, and existence of the contract." *16th Street Investors, LLC v. Morrison*,

27   153 Wash. App. 44, 55-56 (2009).  Specific performance is not appropriate where "the parties

1   had agreed that they needed to reach a further agreement on the terms of the option." *Id.*

2   Washington courts require buyers seeking specific performance to "convince us that the contract

3   and its terms are so definite that we can determine exactly what it means or fix the parties' exact

4   legal liability." *Id.* at 56.

5       Thus, Section 8.1(q) is unenforceable as a matter of law and unavailable to BioMed as an

6   alternative to waiving the condition precedent of Section 9.4.

7                **4.   Specific Performance Is Not Available to BioMed Under the PSA.**

8       BioMed's claims fail for yet another, independent reason.  As a matter of law, the PSA

9   by its terms does not entitle BioMed to specific performance when a condition precedent is

10  unfulfilled under circumstances like those presented here.

11      Section 9.15 specifically states that "if any of said representations and warranties are not

12  correct in all material respects at the time the same is made or as of Closing, and Seller had no

13  knowledge of such inaccuracy when the representation or warranty was made (or when deemed

14  remade at Closing), or if such warranty or representation becomes inaccurate on or prior to

15  closing other than by reason of Seller's default hereunder, Buyer may, upon being notified in

16  writing by Seller of such occurrence on or prior to Closing, either: (a) terminate this Agreement

17  and Escrow pursuant to the provisions of Section 8.5(a) hereof; or (b) waive such matter and

18  proceed to closing." Quiat Decl., Ex. C at BR11072-11073; *id.*, Ex. A (Simonsen Depo.) at

19  48:6-10, 48:13-23, 71:10-13.  BioMed plainly agreed that if Section 9.4 were rendered inaccurate

20  after the execution of the PSA, it could do only one of two things: waive Section 9.4 or terminate

21  the PSA.

22      Under these circumstances, with no default by Dexter, specific performance is not an

23  option available to BioMed.  Although Section 8.5(a) generally provides for remedies to the

24  Buyer in the case of default by the seller, including the remedy of specific performance (Quiat

25  Decl., Ex. C at BR11068), it does not apply to these circumstances for at least two reasons.  First,

26  as already described, Dexter is not in default.  Second, the general canon of contract

27  interpretation that "specific provisions control over the general provisions" applies under

---

DEFENDANT 700 DEXTER, LLC'S MOTION                22          BAKER & HOSTETLER LLP
FOR SUMMARY JUDGMENT                                            999 Third Avenue, Suite 3600
2:15-CV-00930-JPD                                                      Seattle, WA  98104-4040
                                                                              Telephone:  (206) 332-1380

Washington law.  *Foote v. Viking Ins. Co. of Wisconsin*, 57 Wash. App. 831, 834-35 (1990); *see also McGary v. Westlake Investors,* 99 Wash. 2d 280, 286 (1983).  "Because the parties likely paid closer attention to specific or exact terms than general language, [courts] assume that the specific language better expresses the parties' intent."  *Parker v. Tumwater Family Practice Clinic*, 118 Wash. App. 425, 434 (2003) (*citing Foote,* 57 Wash. App. at 834–35).  Section 9.15 specifically denotes the remedies available to BioMed should the requirements of Section 9.4 not be met.  Moreover, as Washington courts have consistently held, "[a]n interpretation of a writing which gives effect to all of its provisions is favored over one which renders some of the language meaningless or ineffective."  *GMAC v. Everett Chevrolet, Inc.*, 179 Wash. App. 126, 140 (2014).  To allow for specific performance under Section 8.5(a) would be to render Section 9.15 meaningless.  In *Empire Realty Invests., Inc. v. U.S. Affordable Housing, LLC*, No. 1:14-cv-380, 2015 WL 2404375, at *7 (N.D. Ind. May 19, 2015), the Northern District of Indiana dealt with remarkably analogous facts as are present here, including a PSA very similar to the language of the PSA in this case, which contained a provision that made representations and warranties a condition precedent to the closing of the transaction.  As is the case here, the remedy for failure to fulfill the condition precedent was either waiver of the particular representation and warranty or termination of the PSA.  The court determined that "[t]o allow Empire to assert its specific performance claim would be to place Empire in a better position than it would have been at the time when USAH's performance on the Agreement was due."  *Id*.  Likewise, BioMed is limited to the terms upon which it agreed, and while "[BioMed] now finds its remedies under Section [9.15] to be insufficient, nothing in its pleadings indicates that the parties did not freely bargain for these terms when they entered the Agreement."  *Id*.

## IV.   CONCLUSION

As of May 20, 2015, the day that Dexter terminated the PSA, the undisputed material facts all point to the same conclusion: the condition precedent regarding threatened claims or litigation could not be satisfied, despite fifteen months of extraordinary effort by Dexter.  For these reasons, Defendant 700 Dexter, LLC respectfully requests that the Court grant Dexter's

DEFENDANT 700 DEXTER, LLC'S MOTION
FOR SUMMARY JUDGMENT
2:15-CV-00930-JPD

23

BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3600
Seattle, WA  98104-4040
Telephone:  (206) 332-1380

Motion for Summary Judgment and dismiss both of Plaintiff BioMed Realty, L.P.'s causes of action.

Dated: December 30, 2015

_s/ Regina V. Culbert_
Regina V. Culbert, WSBA #30213
BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3600
Seattle, WA  98104-4040
Telephone:     (206) 332-1102
Facsimile:      (206) 624-7317
Email: rculbert@bakerlaw.com

*Pro Hac Vice*:

Laurin D. Quiat
Zachariah J. DeMeola
BAKER & HOSTETLER LLP
1801 California Street, Suite 4400
Denver, CO  80202-2662
Telephone:     (303) 861-0600
Facsimile:      (303) 861-7805
Email: lquiat@bakerlaw.com
           zdemeola@bakerlaw.com

Attorneys for Defendant, 700 Dexter, LLC

<u>CERTIFICATE OF SERVICE</u>

1

2          I hereby certify that on December 30, 2015, I electronically filed the foregoing with the

3   Clerk of the Court using the CM/ECF system which will send notification of such filing to the

4   following:

5          Paul R. Taylor
           Byrnes Keller Cromwell LLP
6          1000 Second Avenue, 38th Floor
           Seattle, WA  98104
7          Tel:     (206) 622-2000
           Fax:     (206) 622-2522
8          Email: ptaylor@byrneskeller.com

9
           ***Attorney for BioMed Realty***
10

11         DATED:  December 30, 2015

12                                      BAKER & HOSTETLER LLP

13

14                          By:     *s/ Regina V. Culbert*
                                    Regina V. Culbert, WSBA #30213
                                    BAKER & HOSTETLER LLP
15                                  999 Third Avenue, Suite 3600
                                    Seattle, WA  98104-4040
16                                  Telephone:(206) 332-1102
                                    Facsimile:(206) 624-7317
17                                  Email:rculbert@bakerlaw.com

18                          Attorneys for Defendant, 700 Dexter, LLC

19

20

21

22

23

24

25

26

27