THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BIOMED REALTY, L.P.,

                    Plaintiff,

      v.

700 DEXTER, LLC,

                    Defendant.

CASE NO. C15-0930-JCC

ORDER DENYING DEFENDANT'S
MOTION FOR SUMMARY
JUDGMENT

       This matter comes before the Court on Defendant 700 Dexter, LLC's Motion for

Summary Judgment (Dkt. No. 31). Having thoroughly considered the parties' briefing and the

relevant record, the Court finds oral argument unnecessary and hereby DENIES the motion for

the reasons explained herein.

## I.     BACKGROUND

       This case involves a valuable piece of property located in Seattle's burgeoning tech

neighborhood, South Lake Union. In early 2011, Defendant 700 Dexter ("Dexter") negotiated

the sale of 700 Dexter Avenue North ("the Property") to Plaintiff BioMed Realty for $18 million.

(Dkt. No. 31 at 7.) The Property was the former location of an industrial dry-cleaning operation

and has significant environmental issues, including soil and groundwater contamination. (Dkt.

No. 31 at 7.) Nonetheless, BioMed agreed to purchase the Property, executed a Memorandum of

Purchase Agreement, and recorded the same in the Recorder's Office of King County,

Washington, creating a public record of BioMed's claim of an ownership interest in the Property. (Dkt. No. 31 at 7.)

Due to the complex environmental issues, the parties spent five months negotiating the Purchase and Sale Agreement ("PSA"). (Dkt. No. 36 at 5.) Critical to the agreement were the representations and warranties included in the PSA. (Dkt. No. 31 at 7–8.) One of the warranties, Section 9.4, provided that:

> Except as set forth in the [provided documents] . . . , Seller has not received written notice of, and, to the best of Seller's knowledge and belief, there are no: (a) pending or threatened claims, actions, suits, arbitrations, proceedings (including Condemnation Proceedings) or investigations by or before any court or arbitration body, any governmental, administrative or regulatory authority, or any other body, against or affecting the Property or the transactions contemplated by this agreement . . . .

(Dkt. No. 32-1 at 76.)

Additionally, the parties agreed Dexter would submit a clean-up plan to the Washington State Department of Ecology ("Ecology") to gain its input on the clean up process. (Dkt. No. 36 at 6.) The parties further agreed the transaction would close 30 days after receipt of a satisfactory opinion letter that approved the proposed clean-up plan and assured BioMed that Ecology would not interfere with its development plans. (Dkt. No. 36 at 2.) As of the date of this Order, Dexter has not received an Ecology letter that meets the PSA's specifications. (Dkt. No. 36 at 2.)

At the time the parties executed the PSA, Dexter was not aware of any threatened claims against the Property. (Dkt. No. 31 at 9.) However, in March 2014—two years after the parties entered the PSA—a third party, Washington Builders, asserted legal claims in relation to the Property. (Dkt. No. 31 at 9.) Washington Builders is a single purpose LLC, managed by Vulcan, Microsoft co-founder Paul Allen's real estate corporation, which owns and developed several properties in South Lake Union. (Dkt. No. 31 at 1, 5.) One of Vulcan's properties, Block 43, is the new location for the Allen Institute for Brain Science. (Dkt. No. 31 at 9.) Block 43 is located at 601 Westlake Avenue—just blocks from 700 Dexter. (Dkt. No. 31 at 9.)

Although Washington Builders knew of environmental problems on Block 43 since 2012, it was not aware that a "plume had potentially emanated from the 700 Dexter Property to Block 43 until February 11, 2014." (Dkt. No. 31 at 9.) No later than March 2014, Washington Builders claimed it encountered contamination migrating from 700 Dexter and it incurred additional costs for its clean up. (Dkt. No. 31 at 9.)  By April 28, 2014, Washington Builders alleged damages for remediation of its property, diminished property values, increased construction costs, and lost profits. (Dkt. No. 31 at 9.) Consequently, over the course of the following year, counsel for Washington Builders threatened litigation based on these claims, with the intent of filing a lawsuit if no resolution could be achieved. (Dkt. No. 31 at 9.)

Dexter brought Washington Builders's potential litigation to BioMed's attention. (Dkt. No. 31 at 10.) Dexter pointed out the significance of the litigation threats in light of Section 9.4. (Dkt. No. 31 at 10.) BioMed agreed that the threat of litigation rendered Section 9.4 inaccurate at that time. (Dkt. No. 31 at 10.) BioMed wanted to move forward with the purchase and demanded that Dexter acquire a release from Washington Builders's parent company and all subsidiaries. (Dkt. No. 31 at 10.) Dexter entered into seventeen standstill agreements with Washington Builders, committing each party to refrain from initiating legal action in exchange for the other party's promise of the same while they attempted to resolve their dispute. (Dkt. No. 31 at 10.)

Over the months following the litigation threat, Dexter negotiated with Washington Builders for a release from liability. (Dkt. No. 31 at 12.) The parties submitted several draft alternative dispute resolution agreements, but were ultimately unsuccessful in resolving the claims because Vulcan refused to release its claims against the Property.[1] (Dkt. No. 31 at 12.) Meanwhile, BioMed was unwilling to waive the Section 9.4 condition before closing without a release from Vulcan. (Dkt. No. 31 at 14.) BioMed insists that it was unwilling to waive the

---

[1] To date Washington Builders/Vulcan have not submitted a total dollar amount related to its alleged claim; however, it has estimated actual costs incurred to be about $2.2 million and forecasts remediation costs at $4 million. (Dkt. No. 31 at 14.)

ORDER DENYING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT
PAGE - 3

1   condition when closing was such a ways out. (Dkt. Nos. 36 at 2 and 32-1 at 6.)

2       In early April 2015, Dexter received an updated appraisal of the Property that valued it at

3   $28.5 million. (Dkt. No. 36 at 13.) On May 20, 2015, Dexter sent a letter to BioMed terminating

4   the PSA. (Dkt. No. 36 at 13.) In August 2015, Dexter entered an agreement with a new buyer,

5   Capstone, who agreed to buy the Property for $28.5 million—over $10 million more than

6   BioMed agreed to pay. (Dkt. No. 36 at 14.) While BioMed requires an Opinion Letter to close its

7   transaction, Capstone wanted a consent decree from Ecology. (Dkt. 36 at 14.) Dexter

8   commenced the consent decree process on June 3, 2015—just two weeks after it terminated the

9   BioMed PSA. (Dkt. No. 36 at 14.)

10      BioMed filed this action days after the breach and seeks specific performance, or in the

11  alternative, expectation damages. (Dkt. No. 36 at 1.)

12  **A.    Legal Standard**

13      Rule 56 of the Federal Rules of Civil Procedure governs summary judgment motions and

14  provides that summary judgment is appropriate "if the movant shows that there is no genuine

15  issue as to any material fact and the moving party is entitled to judgment as a matter of law."

16  Fed. R. Civ. P. 56(a). In making such a determination, the Court must view the facts and

17  justifiable inferences to be drawn therefrom in the light most favorable to the nonmoving party.

18  *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 255 (1986). Once a motion for summary

19  judgment is properly made and supported, the opposing party must present specific facts

20  showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Matsushita Elec. Indus. Co.*

21  *v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Material facts are those that may affect the

22  outcome of the case, and a dispute about a material fact is genuine if there is sufficient evidence

23  for a reasonable jury to return a verdict for the non-moving party. *Anderson*, 477 U.S. at 248–49.

24  Ultimately, summary judgment is appropriate against a party who "fails to make a showing

25  sufficient to establish the existence of an element essential to that party's case, and on which that

26  party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

ORDER DENYING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT
PAGE - 4

**B.     Breach of Contract**

At issue in this case is whether Dexter may breach its contract when it speculates that conditions precedent would not be met at the time of closing. Dexter argues that BioMed's claims must be dismissed because there can be no liability for breach of contract when a condition precedent is not fulfilled, despite the good faith efforts of the parties to satisfy it. (Dkt. No. 31 at 18.) BioMed responds that Dexter's breach was premature because the PSA allows BioMed to waive the condition "on or prior to closing" and closing had not yet occurred. (Dkt. No. 36 at 14–15.)

"Conditions precedent are those facts and events, occurring subsequently to the making of a valid contract, that must exist or occur before there is a right to immediate performance, before there is a breach of contract duty, before the usual judicial remedies are available." *Tacoma Northpark, LLC, v. NW, LLC*, 96 P.3d 454, 457 (Wash. Ct. App. 2004) (internal quotations omitted). In other words, "a condition precedent is a fact or event that must take place before a right to immediate performance arises." *Lokan & Associates, Inc. v. American Beef Processing*, *LLC*, 311 P.3d 1285, 1289 (Wash. Ct. App. 2013). If the condition does not occur and is not excused, the promised performance need not be rendered. *CHG Intern., Inc., v. Robin Lee, Inc.*, 667 P.2d 1127, 1129 (Wash. Ct. App. 1983). "Each party has an affirmative good faith obligation to perform conditions precedent to a contract and cannot be excused from performance of the contract by his own misconduct." *Id.* at 1129–30.

In the PSA, Dexter warrants in Section 9.4 that the Property will be free of liability, claims, or threatened claims against it at the time of closing. (Dkt. No. 32-1 at 76.) The parties agree that the pre-closing conditions are conditions precedent to BioMed's obligation to close. (Dkt. Nos. 31 at 18–19 and 36 at 17.) In addition, Section 9.15 unambiguously states performance of Section 9.4 is a condition precedent. (Dkt. No. 32-1 at 78.)

Dexter argues that by May 20, 2015, it was "stuck between two intractable positions." (Dkt. No. 31 at 16.) According to Dexter, BioMed would not close without the Vulcan release,

ORDER DENYING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT
PAGE - 5

and Washington Builders, and its parent company Vulcan, would never execute such a release. (Dkt. No. 31 at 16.) However, the PSA makes clear in Section 9.15 that Section 9.4 "is a condition precedent to Buyer's obligation to close" and provides an agreed remedy for BioMed's benefit if the condition is not met at closing. (Dkt. No. 36 at 14.) If the condition does not occur "on or prior to closing, [BioMed may] either: (a) terminate [the PSA] . . . or (b) waive such matter and proceed to closing." (Dkt. No. 36 at 14–15.)

While Dexter may have felt stuck between a rock and a hard place, it still had to act in good faith in fulfilling the conditions precedent. *CHG*, 311 P.3d at 1129–30. In other words, Dexter had a duty to act in good faith to resolve the potential claim up to closing. Dexter's breach was premature because the failure of the conditions precedent had not fully ripened. (Dkt. No. 36 at 14–15.) Although BioMed had not yet waived the condition when Dexter breached, BioMed had a contractual right up until the time of closing to determine whether to waive the condition if it was not met, or to terminate the contract. (Dkt. No. 36 at 14.) Therefore, Dexter's argument is misplaced.

Moreover, Dexter's characterization of BioMed's position is merely speculative. In fact, when asked in a deposition if BioMed was willing to waive Section 9.4, BioMed's representative testified:

> We didn't feel that the time to make a decision on waiver was ripe. That was something that would have happened if we had been otherwise ready to close so in our collective thinking, we were not making a decision as to whether we would waive it or not. We were waiting to see how the rest of the closing conditions shaped up and to see what the overall state of the deal was when the closing date was proposed and then we would make that decision, but we weren't going to do it months or even longer in advance before we knew what other conditions may not be able to be satisfied . . . . [W]e weren't going to waive anything prematurely. We were not going to tell them yes, stop working on this even though you have another six months until closing. We were clear that we weren't going to waive it at the time . . . .

(Dkt. No. 32-1 at 6.) Thus, regardless of BioMed's rights under the PSA, there is a factual dispute as to whether BioMed would ever waive the condition.

1    Dexter also argues that it acted in good faith to resolve the "intractable" dilemma and that

2    its good faith actions should justify its breach. Whether a party has satisfied a duty of good faith

3    is typically a question of fact. *Riley-Hordky v. Bethel Sch. Dist.*, 350 P.3d 681, 687 n.11 (Wash.

4    Ct. App. 2015). Further, the question of whether Dexter acted in good faith is not determinative

5    of whether breach was appropriate because Dexter breached before the condition precedent had

6    fully ripened. Under these facts and circumstances Dexter is not entitled to summary judgment.

7    **II.    CONCLUSION**

8        For the foregoing reasons, Defendant 700 Dexter, LLC's Motion for Summary Judgment

9    (Dkt. No. 31) is DENIED.

10       DATED this 30th day of March 2016.

John C. Coughenour
UNITED STATES DISTRICT JUDGE

ORDER DENYING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT
PAGE - 7