THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| BIOMED REALTY, L.P., <br><br> Plaintiff, <br><br> v. <br><br> 700 DEXTER, LLC, <br><br> Defendant. | CASE NO. C15-0930-JCC <br><br> ORDER ON MOTION TO AMEND JUDGMENT |

This matter comes before the Court on Defendant 700 Dexter, LLC's motion to amend judgment (Dkt. No. 120). Dexter seeks to amend the decree of specific performance (Dkt. No. 118) and the findings of fact and conclusions of law (Dkt. No. 111) to add the following language: "Upon closing on the sale of the Property and tendering the Property in its current condition, Dexter has no further contractual obligations to BioMed." (Dkt. No. 120 at 1.)

According to Dexter, this amendment is necessary because BioMed "surprisingly refuses to acknowledge its waiver of certain obligations under the PSA, including representations and warranties, as well as Dexter's indemnification obligations." (*Id.*) Dexter maintains that, because BioMed indicated that it would waive all remaining unsatisfied closing conditions, it is judicially estopped from now taking a contrary position. (*Id.* at 6.)

Plaintiff BioMed Realty, L.P. opposes the motion, asserting that the true issue is a claim against the Property that Dexter failed to previously disclose:

> Three weeks before trial, Dexter received notice of a new claim from a neighboring property owner, City Investors XI, L.L.C.[1] Dexter never disclosed that claim to BioMed or the Court. . . . Tellingly, Dexter's motion fails to mention the existence of both this claim and another previously-unknown claim.

(Dkt. No. 124 at 1.) BioMed maintains that it did not waive its right to indemnification for unknown claims and that the Court "should not find a waiver of contractual rights beyond what BioMed clearly agreed to waive." (*Id.* at 1-2.)

Having reviewed the briefing and the relevant record, the Court finds that BioMed waived its right to indemnification for the City Investors claim. When viewed as a whole, the facts show that BioMed was aware that such a claim was possible and sought possession of the Property regardless of its hindrances.

This is first seen on July 27, 2016, when BioMed wrote to Dexter that it would seek specific performance at trial. (Dkt. No. 62-2 at 3-4.) BioMed used broad language in its letter:

> BioMed's request for specific performance will not include asking the Court to enforce *any 700 Dexter contractual obligation other than tendering the property in its current condition*. For example, BioMed will not be asking the Court to require 700 Dexter to get a satisfactory opinion letter, resolve the Washington Builders claim, or handle the remaining post-closing remediation. By removing these complexities from the transaction, BioMed expects that the Court will order the parties to close the sale.

(*Id.* at 4) (emphasis added). The letter continued, "To obviate the need for trial, BioMed is prepared to close now on the Property in its current condition." (*Id.*) In other words, BioMed communicated that it would take the Property as is, despite the likelihood of litigation. While BioMed was only explicit about the Washington Builders claim, it was well aware that other claims were possible—or even likely—as evidenced by its request that Dexter obtain a release of all claims from Vulcan. Because such a release could not be obtained, BioMed understood that the litigation warranty would preclude it from taking possession and determined that waiver of that warranty was in its best interests.

---

[1] City Investors is, like Washington Builders, a Vulcan entity. (*See* Dkt. No. 126 at 2 n.1.)

At trial, BioMed's Senior Vice President and Senior Counsel, Kevin Simonsen, testified about the waiver in a more specific manner. For example, when asked if BioMed was agreeing to "waive everything," Simonsen answered "all the things that were outstanding, that we were fighting about, we would waive those." (Dkt. No. 125-1 at 26.) In response to the question, "What about the Washington Builders claim, how do you propose that's dealt with in the reps and warranties," Simonsen responded, "We would be willing to carve that out from the reps and warranties and say that, basically, there would no litigation or claims known, except for that." (*Id.* at 23.) Likewise, when asked why BioMed did not waive the litigation warranty earlier, Simonsen stated, "Well, we didn't think the time to waive was ripe. Now, we're trying to close, and it's ripe. So, we're saying that we would waive it with respect to the Washington Builders claim." (*Id.* at 29.) According to BioMed, this testimony shows that its waiver extended to only the Washington Builders claim—not to its contractual right to indemnification for unknown claims.[2] (Dkt. No. 124 at 5.)

While Simonsen's testimony was indeed narrowly tailored, the Court does not find this fact dispositive, especially in light of the specific performance decree language subsequently proposed by BioMed. The decree's waiver provisions—which were adopted by this Court—are far more general than Simonsen's testimony, stating: "BioMed has expressly waived any remaining, unsatisfied conditions to closing in Section 8.1 of the PSA, and Dexter's representation and warranty in Section 9.4 regarding litigation and condemnation." (Dkt. No. 118 at 17.) Nowhere does the decree limit this waiver to the Washington Builders claim. If BioMed wanted to be more specific, it knew how to do so.

---

[2] BioMed also argues that "the Court understands that the issues the parties were fighting about were: (i) resolution of the Washington Builders claim; (ii) the sufficiency of the Ecology No Further Action Likely letter; and (iii) the adequacy of post-closing financial assurances under PSA Section 8.1(q)." (Dkt. No. 124 at 5.) It is true that, at trial, BioMed framed the issues this way. However, the Vulcan release could also reasonably be considered an issue "that [the parties] were fighting about."

Similarly, in BioMed's post-trial brief, it broadly states that "Dexter will have no post-closing Property obligations" and that "BioMed has waived and does not seek any post-closing performance from Dexter as part of its claim for specific performance." (Dkt. No. 107 at 5, 6.) BioMed contends that "post-closing property obligations and performance" clearly refers to Dexter's obligation under Article 14 of the PSA to obtain an Ecology letter and remediate the Property. (Dkt. No. 124 at 10.) According to BioMed, indemnification is "not a 'post-closing obligation' [and] is separately addressed in Article 15[3]." (*Id.*) Because the specific performance decree did not specifically mention Article 15, BioMed maintains that it did not waive the right to indemnification. (*Id.*)

The Court rejects this argument for two reasons. First, BioMed's argument contradicts a common-sense understanding of its previous position, *i.e.*, that it sought to close on the Property without enforcing Dexter's unfulfilled contractual obligations. (*See, e.g.*, Dkt. No. 62-2 at 3-4.) With the benefit of hindsight, BioMed takes a fine-tooth comb to the PSA in a post hoc attempt to protect itself. While the Court finds the undisclosed claim troubling, it would be unfair to interpret BioMed's waiver in such a limited manner.

Second, logically speaking, the litigation warranty and the indemnification provision go hand in hand. The litigation warranty required Dexter to promise that no pending claims existed; the indemnification provision required Dexter to bear the financial burden of any such claims. (Dkt. No. 32-1 at 76, 83-84.) The indemnification provision gave teeth to the litigation warranty. Said another way, the parties understood that waiver of the litigation warranty as to the Washington Builders claim meant Dexter would not have to indemnify BioMed for that claim. Thus, the failure to specifically mention Article 15 in the specific performance decree—which,

---

[3] Under the indemnification provision, Dexter agreed to defend and hold harmless BioMed for any losses arising out of Dexter's breach of its representations or warranties, as well as Dexter's activities in "completing (or failing to complete) the environmental remediation" and the "existence or presence of any Hazardous Materials on, under or about the Land or the release or discharge of any Hazardous Materials from the Land." (Dkt. No. 32-1 at 83-84.)

ORDER ON MOTION TO AMEND JUDGMENT
PAGE - 4

as noted above, does not include the Washington Builders limitation—does not leave the right to indemnification untouched.

"Waiver is the intentional relinquishment of a known right." *Wagner v. Wagner*, 621 P.2d 1279, 1283-84 (Wash. 1980). That is what occurred here. Although BioMed was unaware of the specific City Investors claim, it knew that further claims could—and likely would—arise. Despite this, it did not ask the Court to limit its waiver of the litigation warranty. The Court suspects this was because BioMed sought to clear the path to possession. (*See* Dkt. No. 62-2 at 4) ("By removing these complexities from the transaction, BioMed expects that the Court will order the parties to close the sale."). BioMed wanted this valuable piece of property, lumps and all.

To be clear, the Court does not endorse Dexter's bad behavior. Despite ample opportunity, Dexter failed to disclose a pending claim and further obscured its failure by omitting this detail from its opening brief. The fact that BioMed had expressed its intent to waive Dexter's contractual obligations does little to excuse this failure, given Dexter's strenuous opposition to the waiver. (*See* Dkt. No. 62.) This is yet another example of Dexter's lack of transparency, a pattern that has become patently obvious.[4]

Ultimately, the Court does not believe that Dexter's failure to disclose the City Investors claim fundamentally impacted the outcome of this case. BioMed wanted possession of the Property despite the looming threat of litigation. However, the post-closing expenses that BioMed assumed took into consideration only the Washington Builders claim. (*See* Dkt. No. 107 at 6; Dkt. No. 120 at 3.) Because BioMed was unaware of the additional claim, it did not take the claim into account when negotiating the final purchase price. This harm directly flows from Dexter's failure to disclose the claim. Accordingly, the Court ORDERS the parties to negotiate a

---

[4] As a further example, Dexter now suggests that BioMed knew or should have known there were threatened claims from Vulcan entities. (*See* Dkt. No. 126 at 2 n.1.) This contradicts Dexter's position at trial, where it insinuated that BioMed was unreasonable for insisting on a complete release from Vulcan. At the time, Dexter's lawyer explicitly stated that "Vulcan never made any threats in this case to this property. Never." (Dkt. No. 103 at 39.)

reasonable sum of money owed by Dexter to account for the City Investors claim. The parties are strongly encouraged to resolve this issue without Court intervention.

In conclusion, Dexter's motion (Dkt. No. 120) is GRANTED in part and DENIED in part. Although the Court agrees with Dexter as to the extent of BioMed's waiver, it declines to amend the judgment to include the language proposed. Instead, the Court concludes that Dexter is liable to BioMed for a to-be-determined sum to properly address the undisclosed claim.

DATED this 23rd day of February 2017.

John C. Coughenour
UNITED STATES DISTRICT JUDGE